**Jade TOLLIVER, Plaintiff-Appellee,**

v.

**Emil F. AMICI and Virginia Amici, Defendants-Appellants.**

**No. 85–2602.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1986.

Decided Aug. 29, 1986.

Enrico J. Mirabelli, Chicago, Ill., for defendants-appellants.

F. Willis Caruso, Leadership Council, Chicago, Ill., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Jade Tolliver sued the Amicis under the Fair Housing Act, 42 U.S.C. § 3604, and the Equal Opportunity in Housing provision, 42 U.S.C. § 1982, and obtained a bench judgment for their refusal to rent her an apartment because of her race. The court awarded Tolliver $5,000 in compensatory and $10,000 in punitive damages, along with attorneys fees of $7,898. The Amicis seek reversal of the punitive damages award and reversal or remittitur of the grant of attorneys fees. We affirm both awards.

I.

Tolliver and her nine-year-old daughter sought an apartment in April 1984 and noticed a "For Rent" sign in the Amicis' apartment building at 4637 North Hermitage in Chicago. After Mrs. Amici informed Tolliver over the telephone that she would show Tolliver the apartment but did not rent to children, Tolliver contacted the Leadership Council for Metropolitan Open Communities. The Council sent Katherine Divine, a "tester," to the apartment to pose as a prospective white lessee. Amici showed the apartment simultaneously to Tolliver and Divine. At trial, Tolliver testified that during that meeting, Amici stated that she would not rent to a black person such as Tolliver because she had experienced problems with a previous black tenant. Divine testified that she overheard part of the conversation between Amici and Tolliver, during which she heard Tolliver say, "I don't think you want to rent to me," and Amici responded, "It isn't because you're black." Divine further testified that after Tolliver left, Amici said that she

would have no problem renting to Divine, even though Divine had represented that she had a child. According to Divine, Amici stated that she would not rent to black people because several years earlier she had rented to a black couple who had damaged the property and harassed her. Further evidence indicated that on several later occasions Amici told Tolliver that the apartment was no longer available, when in fact it was.

For her part, Amici denied that she turned Tolliver away for racial reasons. She testified that she told neither Tolliver nor Divine that she would not accept black tenants, and although she admitted to lying several times to Tolliver about the availability of the apartment, she cited Tolliver's rudeness as the reason for refusing to rent to her.

The district court found that Tolliver had established that the Amicis had discriminated against her on the basis of race. The court specifically held Divine's testimony to be credible and found that Mrs. Amici had made racial slurs to Tolliver during their conversation. Based on the injury Tolliver sustained as a result of this discrimination, the judge awarded her compensatory damages of $5,000. Moreover, commenting on the "blatant racial statements made by Mrs. Amici," the district judge held that punitive damages were appropriate and awarded $10,000 in punitive damages to Tolliver. Finally, the district court determined that Tolliver was entitled to costs and attorney's fees under 42 U.S.C. §§ 1988 and 3612(c). Although her attorneys submitted hourly fees totalling $11,-385, the district court reduced the amount of fees awarded to $7,898.

## II.

The Amicis urge us to reverse the district court's award of punitive damages on two grounds: first, that the record contains no evidence of willful or wanton conduct on their part, and second, that there was insufficient evidence of their net worth to support an award. We are unpersuaded by either of these arguments.

### A.

"Punitive damages are appropriate when the 'defendants acted wantonly and willfully ... or were motivated in their actions by ill will, malice, or a desire to injure the plaintiffs.'" *Hamilton v. Svatik*, 779 F.2d 383, 389 (7th Cir.1985) (citing *Jeanty v. McKey & Poague, Inc.*, 496 F.2d 1119, 1121 (7th Cir.1974)). The Amicis argue that their conduct cannot be characterized as satisfying this standard, *even accepting* the district judge's factual finding that Mrs. Amici in fact made racial slurs to Tolliver and other "blatant racial statements." We are unable to accord this position any validity. These statements were by their very nature willfully made, and it is difficult to imagine that they could have been motivated by anything other than ill will or malice. Moreover, these statements were more numerous and injurious than those made in *Hamilton*, where this circuit upheld a punitive damages award. Accordingly, the district court did not err when it found the case appropriate for an award of punitive damages.

### B.

"A[n] award of punitive damages should be set aside only if it exceeds what is required to serve the objective of deterrence and punishment." *Hamilton*, 779 F.2d at 389. The Amicis ask us to reverse the punitive damages award, or remand for further proceedings, because they claim that the plaintiff failed to introduce sufficient evidence of their net worth to allow the court to establish an appropriate award. We conclude, however, that the evidence of gross income that the plaintiff did elicit provided the court with a basis for determining an amount commensurate with the objectives of deterrence and punishment. As the district court noted, had the Amicis wished the court to consider a lower figure based on net worth, they should have introduced this evidence at trial. We will not reward their failure to do so by reopening the proceedings at this stage. The court's award of punitive damages in

the amount of $10,000 therefore is affirmed.

### III.

The Amicis' last issue on appeal relates to the attorneys fees awarded Tolliver. The Amicis argue that the award of fees was improper because Tolliver and her attorneys had signed a contingency fee agreement and because Tolliver was financially capable of bearing the fees. Alternatively, the Amicis request that the fee award be reduced because it is excessive. We find no merit in any of these arguments.

### A.

■ The district court awarded fees under two statutes that provide reasonable attorneys fees to prevailing plaintiffs in fair housing cases. The first provides that "[i]n any action or proceeding to enforce a provision of section[ ] ... 1982, ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The second empowers the court to "grant as relief, as it deems appropriate, ... court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* that the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." 42 U.S.C. § 3612(c). Both statutes commit the award of fees to the trial court's discretion, and we will not reverse an award absent an abuse of discretion. *See, e.g., Crumble v. Blumthal,* 549 F.2d 462, 468 (7th Cir.1977).

The Amicis claim that the district court abused its discretion in awarding fees even though Tolliver and her first attorney apparently entered into a contingency fee agreement.[1] We disagree. This court never has held that the existence of a contingency agreement bars the entry of an attorneys fee award. Instead, a contingency fee arrangement is but one factor relevant

to the district judge's determination of whether a fee award is appropriate and whether the plaintiff is financially able to pay the fees. We will not automatically reverse an award merely because the plaintiff may have agreed in advance to a contingency arrangement, and we cannot say that the district court here abused its discretion when it deemed this case appropriate for an award of attorneys fees.

### B.

■ Similarly, it is not apparent that the district court abused its discretion when it found that Tolliver was financially unable to bear the attorneys fees herself. Tolliver's attorneys billed hours totalling some $11,385 in fees; the record demonstrates that her annual income, on which both she and her daughter lived, was $26,000. Certainly the burden of assuming a debt amounting to almost half of her yearly income would be onerous. Thus, the district court did not abuse its discretion when it determined that an attorneys fee award was appropriate under either section 3612(c) or section 1988.

### C.

Finally, the Amicis ask us to hold that the court awarded excessive attorneys fees. Tolliver's attorneys submitted affidavits requesting a total of $11,385 in fees. The district court reviewed each affidavit, finding that the hourly rates listed in each were reasonable but that the total number of hours was not. The court reduced by 30% the hours of two of Tolliver's attorneys and a paralegal in order to compensate for unjustified double staffing. Another lawyer who had originally represented Tolliver was subjected to a reduction of over 37%. The final award thus was reduced to $7,898. Although in certain circumstances an award of this size may be deemed too large, we will defer to the district court's determination that this case

---

1. The agreement with the first attorney was lost (Tolliver subsequently retained new counsel with whom she had no contingency agreement), and there is some confusion as to whether it

ever existed. Nevertheless, the fact that one *may* have existed was brought to the district court's attention and thus was considered when the fees were awarded.

merited fees of this magnitude. We are confident that, based on the court's experience in awarding fees, the reduction produced a reasonable award, and the Amicis have made no new argument on appeal that suggests the contrary. For this reason, the attorneys fee award is affirmed.

AFFIRMED.