Susanne LITTLEFIELD,
Plaintiff–Appellee,

v.

Malcolm McGUFFEY, Defendant–
Appellant.

Susanne LITTLEFIELD,
Plaintiff–Appellant,

v.

Wally MACK, Santa Maria Realty and
Malcolm McGuffey, Defendants–
Appellees.

No. 90–3799, 90–3827.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1991.

Decided Jan. 27, 1992.

As Amended Feb. 7, 1992.

**1340**

Aram A. Hartunian (argued), Steven P. Schneck, Robert C. Howard, Hartunian, Futterman & Howard, Chicago, Ill., for plaintiff-appellee.

Richard H. Hoffman (argued), Karen A. Covy, Querrey & Harrow, James L. Elsesser, John T. Harris (argued), Elsesser & Associate, Chicago, Ill., for defendants-appellants.

Before WOOD, Jr.,* POSNER and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Susanne Littlefield sued Malcolm McGuffey, also known as Wally Mack among other persona, claiming he denied her rental housing because her boyfriend, the father of her daughter, was not of the same race as she. She sought relief under the Equal Opportunity in Housing provision of the Civil Rights Act of 1866 and the Fair Housing Act as amended by the Fair Housing Amendments Act of 1988: 42 U.S.C.A. §§ 1982, 3604, 3613, and 3617. In addition she claimed he committed numerous, outrageous acts of harassment. Thus, availing herself of our pendent jurisdiction, she also raised a claim for intentional infliction of emotional distress under Illinois common law. The jury found Mr. McGuffey liable and awarded $50,000 in compensatory damages and $100,000 in punitive damages.

McGuffey thereupon moved for a judgment notwithstanding the verdict and, alternatively, for a new trial. Judge Williams denied both motions. She then entered judgment on the verdict, awarded attorney's fees, denied a fee multiplier, and imposed Rule–11 sanctions on Mr. McGuffey's attorneys for offering a motion which was based on "inadequate legal inquiry and [which was] being used 'to harass, delay or increase the costs of litigation.'" *Littlefield v. Mack*, 750 F.Supp. 1395, 1404 (N.D.Ill.1990). Defendant McGuffey appeals the judgment and the award of attorney's fees. The plaintiff, Ms. Littlefield, cross-appeals the denial of a fee multiplier. For the reasons stated below we affirm.

## BACKGROUND

On September 14, 1988, Ms. Littlefield, who was then 23 years old, met Malcolm McGuffey at one of his apartment buildings. After viewing the advertised apartment she completed a rental application form and gave him a $280 check as a security deposit, leaving the name of the payee blank at McGuffey's request. Later, McGuffey filled in the name of the payee with the fictitious "Santa Maria Realty," claiming at trial to have chosen that name because it had been close to Columbus Day. He endorsed the check first as "Santa Maria Realty" then as "Osvaldo Kennardo," another persona of his. At their meeting McGuffey and Ms. Littlefield had agreed she, her younger sister Sandra, and her daughter Shaunte would occupy the two-bedroom apartment and that McGuffey would purchase and install a carpet with Ms. Littlefield paying the cost of installation. McGuffey gave Ms. Littlefield a key

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case to which this order applies.

to the apartment, and between then and September 27 she, members of her family, and friends cleaned and painted the apartment and moved various belongings into it.

On September 27, 1988, Bruce Collins, accompanied by Shaunte, the two-year old daughter of Collins and Littlefield, took a check to McGuffey to pay for the carpet installation. When McGuffey realized Mr. Collins was not the same race as Ms. Littlefield but was the father of her daughter, he became quite agitated and exclaimed "the old man" had rented the apartment to someone else. At trial McGuffey admitted he sometimes referred to himself as "the old man."

After Collins left, McGuffey called Ms. Littlefield at work and told her she could not rent the apartment because "the boss" (another of McGuffey's persona) had rented it to someone else. He also told her he had changed the locks and had put her belongings out on the porch. This was but the first of many phone calls McGuffey made to Ms. Littlefield. That evening he called her at home, identified himself as Walley Luther, and, mimicking a stereotypical black manner of speaking, told her he wanted to move in with her and "six black guys, ... quit work and take welfare ... and drugs with [her] ... and swap wives with Bruce." He called her at least two more times that night and several other times that week with similar, degrading messages.

Ms. Littlefield was not the only recipient of McGuffey's harassing, insulting and racist phone calls. Her sister, Kathleen Gutierrez, was called many times over the next week or so. McGuffey told her he was a member of the Ku Klux Klan and regularly asked how her sister, Susanne, "could have [gone] to bed with a nigger and how she could ... have a nigger baby." On one occasion McGuffey attempted to lure Ms. Gutierrez outside on the pretext that she had to move her car because the church lot where it was parked was being caulked.

The phone calls did not suffice. In early November McGuffey tracked down Ms. Littlefield's new residence and left a note, written on a napkin taped to her door, threatening the life of Bruce Collins and repeating racist slurs. When she arrived home that evening, Ms. Littlefield found her sister, Sandra, hiding behind the door, clutching a broom.

Ms. Littlefield and her witnesses, including Bruce Collins, Kathleen Gutierrez, Sandra Littlefield, other relatives and friends, testified to all these events and more. Additionally, Ms. Littlefield testified to numerous episodes of severe emotional distress. She became hysterical upon receiving McGuffey's call at work, went to the restroom, and cried; the rest of the day she suffered from stomach upset and diarrhea. She experienced numerous episodes of disquiet and fright, being particularly fretful because she feared for her daughter's safety. Ms. Littlefield also testified that when she came home at night with Shaunte, she would run from her car to her apartment, clutching her daughter in one arm, with her keys in one hand and a can of mace in the other.

McGuffey denied Ms. Littlefield's allegations, claiming he had not refused her rental housing on the basis of race and that he had not harassed her. He asserted, instead, he had learned from various businesses and prior landlords that she was a poor credit risk and had a history as an undesirable tenant. He presented no witnesses, however, that confirmed having given him the negative rental-history or credit information. On the other hand, Ms. Littlefield presented witnesses from credit departments of various businesses McGuffey claimed to have contacted. They generally testified the credit information McGuffey claimed to have acquired would not be given out and that, anyway, Ms. Littlefield's credit history was respectable. The testimony of Brice Fawcett, Ms. Littlefield's former landlord, was notably damaging for the defendant. He contradicted everything McGuffey claimed to have been told by him; he stated Ms. Littlefield had been a good tenant; and he testified McGuffey did not interview him until October 1, four days after McGuffey evicted Ms. Littlefield. As the district court ob-

served, "Mr. McGuffey's story therefore depended almost entirely on his own credibility, and he was, to put it mildly, a witness with credibility problems." *Littlefield*, 750 F.Supp. at 1398.

## ANALYSIS

Sometime after the district court entered judgment, Mr. McGuffey filed a petition for bankruptcy. That action implicated the automatic stay provision of the Bankruptcy Code. 11 U.S.C. § 362. Subsequently, however, the bankruptcy court entered an order modifying the automatic stay provision to permit this appeal to proceed. *See, In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991) (automatic stay may be modified to permit resumption of civil suit).

Mr. McGuffey raises five issues: (1) whether the district court erred in admitting or refusing to admit certain items of evidence, (2) whether two instructions given the jury were improper, (3) whether Ms. Littlefield's counsel made improperly prejudicial statements during closing argument, (4) whether there was sufficient evidence to support the damage awards, and (5) whether the award of attorney's fees was excessive. Ms. Littlefield raises a sixth issue in her cross-appeal: whether the district court erroneously denied her attorneys a fee multiplier for contingent risk.

## ADMISSION OF EVIDENCE

McGuffey claims the trial court made three errors regarding admission of evidence that singly and collectively denied him a fair trial. Not only are these claims without merit, as discussed below, but also are subject to dismissal for defendant's failure to comply with Federal Rule of Appellate Procedure 28(a)(4).

Rule 28(a)(4) straightforwardly commands, "The argument [portion of appellant's brief] shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, *with citations to the authorities*, statutes and parts of the record relied on." Fed. R.App.P. 28(a)(4), 28 U.S.C.A. (emphasis added). We recently explained that a "litigant who fails to press a point by support-ing it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.); *see also John v. Barron*, 897 F.2d 1387, 1392–94 (7th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990).

McGuffey cites no authority for any of the three evidentiary issues raised: neither the relevant standard of review nor a holding in support of any proposition of law espoused. Additionally, he does not show why his points are sound *despite* the absence of supporting authority. Consequently, the three points he raises are subject to forfeiture, as is his claim of collective error. We need not rely on forfeiture, however, an argument not raised by the plaintiff.

■ On the merits we review claims of reversible error in a trial court's decision to admit or exclude evidence only for abuse of discretion, giving the judge great deference. *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990). "[T]he relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether *any* reasonable person could agree with the district court." *Id.* at 150–51 (citations omitted; emphasis in original).

■ McGuffey's first claim of evidentiary error is that the court admitted without adequate foundation the napkin on which the death threat was written. He argues there was no evidence presented that he knew the location of Ms. Littlefield's residence at the time. In her brief Ms. Littlefield replies that she had witnesses available who would have testified that McGuffey learned of her new address from an amended complaint she filed October 20, 1988, with the Chicago Department of Housing, but she admits "forgetting" to call them. She argues, however, McGuffey, who had objected at a pre-trial hearing, failed to object at trial to the napkin's admission on the basis of inadequate foundation of delivery. McGuffey does not claim to have raised this objection at trial.

In *United States v. Dougherty*, 895 F.2d 399, 403 (7th Cir.). We stated, "If a condition attached to the admission of evidence is not satisfied by the offering party, the burden properly rests on the objecting party to renew the objection." Under the circumstances here we will not reverse the ruling of the district court; anyway, the judge does not appear to have abused her discretion.

■ McGuffey's next claim of error is that the district court should not have allowed Ms. Littlefield to testify about episodes of fear or anxiety that occurred when McGuffey was not physically present. Ms. Littlefield replies that her testimony was about emotional distress brought on by McGuffey's outrageous acts. McGuffey cites no Illinois authority for the proposition that the only admissible evidence of a plaintiff's severe emotional distress is that of distress which occurs in the physical presence of the perpetrator; nor have we found any. Were the law as McGuffey asserts, outrageous conduct over the telephone or through the mails that causes severe emotional distress could not be an actionable tort. The law in Illinois is otherwise. *See, for example, Pavilon v. Kaferly*, 204 Ill.App.3d 235, 149 Ill. Dec. 549, 553–54, 561 N.E.2d 1245, 1249–50 (1st Dist.1990) (judgment for plaintiff for intentional infliction of emotional distress, including acts over the telephone and through the mail affirmed; reversed and remanded on other grounds). Accordingly, the district court did not abuse its discretion.

McGuffey further asserts it was error for the district court to admit Ms. Littlefield's testimony about episodes of fear and anxiety not accompanied by medically significant, physical manifestations. This claim of error fails because in Illinois physical manifestation of emotional distress is not an element of the tort of intentional infliction of emotional distress.

■ Under Illinois common law the tort comprises three elements.

First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill. Dec. 724, 533 N.E.2d 806, 809 (1988) (citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976)). These are the only elements enunciated by the court. Medically significant, physical manifestation of emotional distress in not among them. Citing *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961), the case first recognizing the tort in Illinois, the court in *McCaskill v. Barr*, 92 Ill.App.3d 157, 47 Ill.Dec. 211, 212, 414 N.E.2d 1327, 1328 (4th Dist.1980), stated, "Illinois, unlike some other jurisdictions, does not require physical injury or disability to accompany, or result from, the psychic trauma." In *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 609 (1991), the Illinois Supreme Court expressly stated that the *Knierim* "court found that a plaintiff need not allege physical injury to recover for intentional infliction of emotional distress."[1] Thus, the district court did not err.

---

**1.** Prior to *Corgan*, recent decisions by the courts of all five appellate districts in Illinois listing the elements of the tort had not included physical manifestation, physical injury or physical trauma among them. *See, for example, Lundy v. City of Calumet City*, 209 Ill.App.3d 790, 153 Ill.Dec. 874, 567 N.E.2d 1101, 1102–03 (1st Dist. 1991); *Hough v. Weber*, 202 Ill.App.3d 674, 147 Ill.Dec. 857, 867, 560 N.E.2d 5, 15 (2nd Dist.), *appeal denied*, 135 Ill.2d 556, 151 Ill.Dec. 382, 564 N.E.2d 837 (1990); *McCarter v. State Farm Mutual Auto Insurance Co.*, 130 Ill.App.3d 97, 85 Ill.Dec. 416, 473 N.E.2d 1015, 1020 (3rd Dist. 1985); *Tobias v. Winkler*, 156 Ill.App.3d 886, 109 Ill.Dec. 211, 509 N.E.2d 1050, 1056 (4th Dist.), *appeal denied*, 117 Ill.2d 554, 115 Ill.Dec. 410, 517 N.E.2d 1096 (1987); *Kohlmeier v. Shelter Insurance Co.*, 170 Ill.App.3d 643, 121 Ill.Dec. 288, 297, 525 N.E.2d 94, 103 (5th Dist.), *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 219, 530 N.E.2d 247 (1988). Several of these courts have divided the third element of *McGrath* into two separate elements: severe emotional distress and both actual and proximate causation. Additionally, the holding in *Corgan* changed the law in Illinois at least to the extent that a plaintiff need not allege physical symptoms of emotional

■ McGuffey's third claim of evidentiary error is that the court improperly excluded evidence material to the defense—evidence, he asserts, which would have shown Ms. Littlefield to be a poor credit risk. He argues that certain defense exhibits, which we need not reiterate here, testimony sought from his own witness, John Donegan, and testimony sought on cross-examination of Ms. Littlefield and Bruce Collins were not admitted because the trial court improperly limited his proofs to *only* the specific documents of which he had exact knowledge at the time he rejected Ms. Littlefield's application. But the core of McGuffey's defense was that at the time he rejected Ms. Littlefield's application he knew she was a poor credit risk. What he learned or became aware of later was not relevant to the defense he posited. Thus, we cannot say Judge Williams abused her discretion.

## JURY INSTRUCTIONS

■ McGuffey takes issue with two instructions given the jury. Both relate to damages: the first, compensatory, and the second, punitive. A court of review should "proceed cautiously when asked to set aside a jury's verdict and order a new trial, bound to consume substantial judicial resources, on the ground that the instructions contained erroneous or confusing passages." *Needham v. White Laboratories, Inc.*, 847 F.2d 355, 360 (7th Cir.1988). Our review of jury instructions is limited; they should be construed in their entirety, not in isolation; and reversal is mandated only "if the jury's comprehension of the issues is so misguided that a litigant is prejudiced." *Goldman v. Fadell*, 844 F.2d 1297, 1302 (7th Cir.1988).

First, McGuffey finds fault with Plaintiff's Instruction No. 21 regarding her state-law claim of intentional infliction of emotional distress. He raises numerous allegations, the essence of which is that there was insufficient evidence of past, present, or future damages to justify giving the challenged instruction.

■ Illinois law controls the propriety of the challenged jury instruction, because federal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law, including the substance of jury instructions. *Felder v. Casey*, 487 U.S. 131, 151, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988); *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 595 (7th Cir.1985). The law in Illinois is well established that "a jury instruction is justified if it is supported by some evidence in the record." *Caballero v. Royston*, 219 Ill.App.3d 477, 162 Ill.Dec. 180, 579 N.E.2d 994, 997 (1st Dist.1991).[2] There is sufficient evidence in the record to support giving the challenged instruction. A perusal of the facts recited above shows Ms. Littlefield presented evidence of her having suffered severe emotional distress. *See also Littlefield*, 750 F.Supp. at 1397. Additionally, there was some evidence of that distress continuing through the time of trial. Thus, the district court was not without justification for giving the instruction with respect to past, present, and future damages.

We note also that McGuffey has waived the issue because he did not object at trial to that part of the instruction. Federal Rule of Civil Procedure 51 states, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider the verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51, 28 U.S.C.A. Failure to comply waives appellate review of the issue. *Olson v.*

distress in a claim of negligent infliction of emotional distress growing out of a patient-practitioner relationship. *Corgan*, 574 N.E.2d at 609.

**2.** The appellate courts in the other four districts are in accord: *Friedman v. Park District of Highland Park*, 151 Ill.App.3d 374, 104 Ill.Dec. 329, 502 N.E.2d 826, 837 (2nd Dist.1986); *Black v.*

*Peoria Marine Construction Co.*, 160 Ill.App.3d 357, 112 Ill.Dec. 208, 513 N.E.2d 622, 626 (3rd Dist.1987); *Ralston v. Plogger*, 132 Ill.App.3d 90, 87 Ill.Dec. 386, 476 N.E.2d 1378, 1383 (4th Dist. 1985); *Deming v. Montgomery*, 180 Ill.App.3d 527, 129 Ill.Dec. 466, 470, 536 N.E.2d 150, 154 (5th Dist.), *appeal denied*, 127 Ill.2d 614, 136 Ill.Dec. 583, 545 N.E.2d 107 (1989).

*Tyler,* 825 F.2d 1116, 1118 (7th Cir.1987); *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 675 (7th Cir.1985), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). Our search of the record—necessitated by the appellant's failure to cite the record—indicates that McGuffey did object to Plaintiff's Instruction No. 21. He objected, however, to only the last paragraph of what was then a two-paragraph instruction. The court agreed and deleted the objected-to paragraph. Thus, he failed to comply with Fed.R.Civ.P. 51 by not objecting to the paragraph about which he now complains.

█ Next, McGuffey claims the court erred in giving, over his objection, an instruction that did not state the Fair Housing Act ("FHA") capped punitive-damage awards at $1,000. At the time McGuffey racially discriminated against Ms. Littlefield, as well as at the time she initiated her action against him, the Fair Housing Act contained an express limitation on punitive-damage awards. 42 U.S.C.A. § 3612 (West 1977). In contrast, no similar statutory limitation existed (or now exists) on punitive damages awarded under 42 U.S.C. § 1982.[3] By the time the case went to trial, however, the Fair Housing Amendment Act of 1988, codified at 42 U.S.C. §§ 3601–3619, had gone into effect. It removed the cap on punitive-damage awards, renumbered § 3612 to § 3613, and made other changes not relevant here. *Compare* 42 U.S.C.A. § 3612(c) (West 1977) with 42 U.S.C.A. § 3613(c)(1) (West 1977, Supp. 1990).

McGuffey's specific claim of error—the claim that the FHA's damage-limitation should have been stated in the jury instruction, although there was an accompanying § 1982 claim—fails. This is because the district court was correct when it instructed the jury on the law in effect at the time of decision rather than on the prior law.

It is a long-held, general principle "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (Award of attorney's fees permitted for services rendered before effective date of statute where the statute became effective after trial court decision but before resolution of direct appeal.).

Applying the new § 3613 to McGuffey is not a manifest injustice and is not contrary to statutory direction or legislative history. In *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184, 191 (7th Cir.1982), we refused to apply the Fair Housing Act's punitive-damage cap where a claim was also brought under 42 U.S.C. § 1982. Even the court in the case cited by McGuffey as authority for granting his requested instruction held that the Fair Housing Act's punitive-damage cap did not limit awards made under § 1982. *Fountila v. Carter,* 571 F.2d 487, 494 (9th Cir.1978). Here the jury entered a general verdict for the plaintiff and awarded both compensatory and punitive damages without allocating specific amounts for violation of the Civil Rights Act, the Fair Housing Act or Illinois common law. Under these circumstances, no material injustice was worked on the defendant by the trial court's applying the law in effect at the time of decision. Moreover, McGuffey points to no statutory directive or legislative history that clearly demonstrates removal of the cap applies only to causes of action arising after the effective date of the amendments. We are not convinced by McGuffey's argument that the statute's general delay in its effective date until 180 days after enactment constitutes a statutory direction sufficient to overcome application of the principle enunciated in *Bradley.* The trial court properly refused McGuffey's proposed instruction.

CLOSING ARGUMENT

McGuffey identifies two episodes of allegedly improper argument by plaintiff's

---

**3.** Under Illinois common law, punitive damages are not available in an action for intentional infliction of emotional distress because outrageous conduct is an element of the action. *Knierim v. Izzo,* 22 Ill.2d 73, 174 N.E.2d 157, 165 (1961).

counsel that the court allowed over defendant's objection. First, he claims it was prejudicial error for counsel to argue that $1,000 might be appropriate compensation for Ms. Littlefield's cleaning and painting the apartment. Second, he asserts it was prejudicial error for counsel to argue in rebuttal that the defendant presented no witnesses to corroborate his having received adverse information about Ms. Littlefield.

It is well established, at least for civil trials, that "improper comments during closing argument rarely rise to the level of reversible error." *Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir.1989) (quotation marks and citations omitted). "It is within the trial court's discretion to determine whether counsel's remarks require admonition to the jury, and that discretion will only be upset for clear abuse." *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1311 (7th Cir.1985) (citations omitted).

McGuffey was not unfairly prejudiced by either complained-of argument, and the trial court did not abuse its discretion in overruling defendant's objections.

■ The first argument McGuffey finds objectionable is the one by plaintiff's counsel that $1,000 would be reasonable compensation for the painting and cleaning done in the apartment. In *Valbert* we reiterated that "counsel is entitled to make arguments based on reasonable inferences from the evidence during closing argument." *Valbert*, 866 F.2d at 242 (footnote omitted).

Evidence was presented at trial that Ms. Littlefield had cleaned and painted the apartment after McGuffey agreed to rent it to her but before he reneged. The evidence of this work was summarized by Ms. Littlefield's counsel as follows:

And you heard testimony that there were at least six persons on two separate days painting and cleaning that apartment.... They all went on two separate days for at least five, six, maybe seven hours, and painted and cleaned this filthy apartment, and another day Bruce Collins went back and finished the job.

Counsel continued, suggesting the work just described could be valuated on the basis of the number of person-hours expended times a specified rate per hour. Mr. McGuffey's counsel objected, and the objection was sustained. Ms. Littlefield's counsel made one unsuccessful attempt to rephrase the argument, then stated:

MR. SCHNECK: She's entitled to compensation.

MR. HOFFMAN: I'll object to that, Your Honor.

THE COURT: Overruled. That statement is fine, that she's entitled to compensation.

MR. SCHNECK: And a reasonable amount of compensation for the painting and cleaning that was done in that apartment might be a thousand dollars.

MR. HOFFMAN: I'm going to object to that, Your Honor.

THE COURT: Overruled.

Neither of these two statements by plaintiff's counsel are a basis for appellate reversal. First, a plaintiff is entitled to compensation if the jury finds liability and consequent damage; counsel may argue that point. Second, it is reasonable to infer from the evidence presented that $1,000 would constitute appropriate compensation. Those arguments presented questions for the jury to resolve; the trial court did not abuse its discretion in permitting them to remain before the jury.

■ The other argument McGuffey finds objectionable is the one by plaintiff's counsel that certain named individuals did not take the witness stand to corroborate the defendant's testimony. McGuffey argues counsel violated the missing-witness rule by referring to potential witnesses, equally available to plaintiff and defendant, who could have testified for the defendant but did not. That rule permits an inference of unfavorable testimony from the missing witness, but only if that witness is peculiarly within the opposing party's power to produce. *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1353 (7th Cir.1983). Thus, to draw the unfavorable inference, counsel must

show "either that the missing witness is physically available only to the opponent or that the witness has the type of relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party." *Id.* Whether to allow argument on a party's "failure to produce a witness rest[s] largely in the discretion of the trial court, but the court should not preclude such argument when the case presents a significant question on this point." *Id.* at 1352–53 (footnote and citation omitted).

■ During the rebuttal phase of closing argument, plaintiff's counsel argued:

Again, ladies and gentlemen, there's not a single witness, not a single witness put forth to corroborate any story that he was allegedly told. Nobody testified about what they said to him. You didn't hear from Eva, Larisa Kozlowski, Eddie Romero, Mary, John, the old man, the boss, Osvaldo Kennardo. You didn't hear from anybody, anybody but the defendant. He's a liar. You know it, and you can disregard everything that he said.

McGuffey did not make a timely objection to this statement but had objected a short time earlier to a similar statement regarding Eva and Larisa Kozlowski, claiming in essence that counsel had breached the missing-witness rule. The objection was overruled. Thus, we need review only that earlier statement about Eva and Larisa Kozlowski and only for abuse of discretion.

McGuffey's entire claim, nevertheless, fails on the merits. First, plaintiff's counsel did not ask the jury to infer the missing testimony would be unfavorable to the defendant. Rather, he argued that the defendant's testimony was not corroborated and that the absence of corroborating witnesses raised doubts about the credibility of defendant's disputed testimony. We have long permitted counsel, within the bounds of civility, to characterize an "appellant's defense as 'dishonest,' ... [as] 'a lie.'" *Heald v. Milburn,* 125 F.2d 8, 11 (7th Cir.), *cert. denied,* 316 U.S. 681, 62 S.Ct. 1267, 1268, 86 L.Ed.2d 1754 (1942). In criminal cases, too, the prosecution may vigorously

question the veracity of the defendant as a witness. *United States v. Jungles,* 903 F.2d 468, 479 (7th Cir.1990). The argument here does not warrant reversal.

Second, the case did present a significant point on what the defendant had been told by whom. The essence of McGuffey's defense was that he refused to rent to Ms. Littlefield, not for impermissible, race-based reasons, but because he had been told by numerous individuals that she was an undesirable tenant and a poor credit risk. The individuals he named included Eva and Larisa Kozlowski, Eddie Romero, Mary, John, the old man, the boss, and Osvaldo Kennardo; he did not call any of them as witnesses but, instead, relied mostly on his own testimony to carry the day. On the other hand, Ms. Littlefield called witnesses who either testified that it was against their own or company policy to reveal credit-worthiness or renter-reliability information or testified they had not given Mr. McGuffey such information about the plaintiff.

Lastly, McGuffey testified he was Santa Maria Realty ("I made it up.") and Osvaldo Kennardo ("I can be [him] if I want to be, can't I?"). There is also some evidence he was the sole progenitor of one or more of the other individuals he named. Clearly, an alter ego is one type of witness who has a "relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party." *Chicago College,* 719 F.2d at 1353.

The missing-witness rule is not applicable, and, even if it were, it was not violated. Thus, the court did not abuse its discretion in overruling defendant's objections.

## SUFFICIENT EVIDENCE

McGuffey first claims there was not sufficient evidence to support Ms. Littlefield's claim of intentional infliction of emotional distress. He asserts the trial court should have granted his motion for a directed verdict because her physical manifestations of emotional distress were both inadequate and medically insignificant. This claim of error fails because under Illinois common law, as discussed above in the section, AD-MISSION OF EVIDENCE, physical man-

ifestation of emotional distress is not an element of the tort of intentional infliction of emotional distress.

McGuffey's next two claims of error are that there is insufficient evidence to support the jury's verdict awarding, on the one hand, $50,000 in compensatory damages and, on the other, $100,000 in punitive damages. A damage award will not be vacated "for excessiveness unless it is 'monstrously excessive' or there is 'no rational connection between the evidence on damages and the verdict.'" *Matlock v. Barnes*, 932 F.2d 658, 667 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991) (quoting *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 972 (7th Cir.1983)). Additionally, "it is necessary to consider whether the award is excessive in comparison to other awards in similar cases." *Id.* (citation omitted).

The defendant who challenges a jury's award of compensatory or punitive damages based on the claim of insufficient evidence bears a heavy burden. The jury is the trier of fact, charged with determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences. Its findings are traditionally given great weight. Moreover, the appellate question is a fact intensive one, and the burden is squarely on the defendant to demonstrate the evidence is indeed insufficient to support the jury's verdict. The evidence which this court reviews to resolve claims of insufficiency is that contained in the trial record, and it is the duty of the appellant to cite the relevant portions of the record. Fed.R.App.P. 28(a)(4), 28 U.S.C.A.; U.S.Ct. of App. 7th Cir. Rule 28(d), 28 U.S.C.A. The appellant has not borne his burden.

■ McGuffey claims the compensatory-damage award must be reduced, if not reversed, because the plaintiff "presented no evidence of out-of-pocket loss" and no evidence of economic damage, but only "intangible elements of emotional distress." He further claims the amount of the award was the result of the jury's being carried away by passion and prejudice, due in large part to Ms. Littlefield's testimony about her emotional feelings.

But it is precisely the testimony about her emotional feelings and response to his terror tactics which supports the award for the claims of intentional infliction of emotional distress and racial discrimination. For example, Ms. Littlefield testified that after Mr. McGuffey called her at work to tell her she could not move into the apartment, she became scared, went to the washroom, cried for a half hour, and left work for the day without explaining to her boss why because she was too embarrassed. She also testified that in late October or early November 1988, after moving into an apartment with her daughter and sister, a terrifying note was discovered taped to her door. The note read: "By THE Time you read this message Kiss your Niger [sic] friend goodbye Bitch → he's dead!!!" Plaintiff's Exhibit A. Plaintiff's handwriting expert testified the note had been written by McGuffey, but the defendant's expert was equivocal. All death threats are heinous and would support a finding of intentional infliction of emotional distress. This one all the more because it employs the most venomous and loathsome of racist epithets.

In addition, Ms. Littlefield testified she purchased cleaning, repair, and painting supplies, that she, members of her family, and friends cleaned and painted the apartment she was never allowed to occupy, and that she moved numerous personal items into it. This testimony belies McGuffey's appellate argument that Ms. Littlefield suffered no out-of-pocket loss.

Lastly, the jury's award is not out of line with other, similar awards. In *Webb v. City of Chester, Ill.*, 813 F.2d 824 (7th Cir.1987), we approved an award that included $20,250 as compensation specifically for embarrassment and humiliation where a police officer successfully asserted a claim of sexually discriminatory discharge. In *Webb* we also noted awards had passed appellate review where they "ranged from a low of $500 to a high of over $50,000." *Id.* at 837. At least one Illinois appellate court has approved a compensatory-dam-

age award of $138,450 in an action that included a claim for intentional infliction of emotional distress; the other claims were for violating the duty to deal in good faith and tortuous breach of contract. *Salvator v. Admiral Merchants Motor Freight*, 156 Ill.App.3d 930, 109 Ill.Dec. 337, 509 N.E.2d 1349 (4th Dist.), *appeal denied*, 116 Ill.2d 576, 113 Ill.Dec. 317, 515 N.E.2d 126 (1987).

We, therefore, affirm the jury's compensatory-damage award.

■ McGuffey's other complaint is about the amount of the punitive-damage award. Although clothed as a claim of insufficient evidence, it is in actuality a claim that Ms. Littlefield should have but did not present sufficient evidence of his financial worth. As such, this claim is merely a restatement of McGuffey's claim, rejected below, that the plaintiff has the burden of proving a defendant's financial worth where punitive damages are sought.

Nonetheless, we, like the district court, conclude there is sufficient evidence to support the jury's punitive-damage award for the federal law claims. Initially, McGuffey rejected Ms. Littlefield as a tenant because of the race of her boyfriend and their daughter. McGuffey's subsequent acts of harassment and intimidation were entirely gratuitous and did not begin until *after* his initial act of racial discrimination. These later acts, as Judge Williams noted, included the following: (a) he immediately removed her belongings from the apartment, exposing them to theft and vandalism and her to public ridicule and humiliation; (b) he made numerous, blatantly racist, harassing phone calls to Ms. Littlefield; (c) he made similar racist, harassing phone calls to members of Ms. Littlefield's family who did not live with her; (d) he went to her sister's home and physically intimidated her; and (e) there is, of course, the death threat to Bruce Collins posted on Ms. Littlefield's door. *Littlefield*, 750 F.Supp. at 1402–03. Not only is the evidence sufficient to support the award of punitive damages, it also supports the award of compensatory damages for the federal and state law claims.

We, therefore, affirm the jury's punitive-damage award.

■ McGuffey's fourth claim is that the district court erred in not granting defendant's motion for JNOV with regard to the punitive-damage award. He argues a defendant should not be required to offer evidence of his or her own impecunious circumstances; instead, he asserts the plaintiff must bear the burden of proving defendant's financial worth, given the available tools of discovery. McGuffey cites a California state-court case as the express authority for his proposition: *Dumas v. Stocker*, 213 Cal.App.3d 1262, 262 Cal.Rptr. 311 (1989). But we are not bound by California state law on questions of federal law and have not adopted that rule. Rather, we have taken a different path— one trod by courts of appeals for other circuits. *See, for example, Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 373 (2nd Cir.1988), *Woods–Drake v. Lundy*, 667 F.2d 1198, 1203, n. 9 (5th Cir.1982), *Tri–Tron International v. Velto*, 525 F.2d 432, 438 (9th Cir.1975).

*Tolliver v. Amici*, 800 F.2d 149 (7th Cir. 1986), states the rule in this circuit and is determinative. Also, the parallelism is unmistakable. There, the plaintiff, claiming she had been denied rental housing because of her race, sued under the Equal Opportunity in Housing provision of the Civil Rights Act of 1866 and the Fair Housing Act: 42 U.S.C. §§ 1982, 3604. Finding for the plaintiff, the district court awarded both compensatory and punitive damages, which, although clearly not relevant to our review, were one order of magnitude smaller than the ones here. On appeal, the defendants in *Tolliver* asked us to reverse the punitive-damage award because, as they claimed, "the plaintiff failed to introduce sufficient evidence of their net worth to allow the court to establish an appropriate award." *Id.* at 151. We affirmed both awards and held:

> [T]he evidence of gross income that the plaintiff did elicit provided the court with a basis for determining an amount commensurate with the objectives of deterrence and punishment. As the district court noted, had the [defendants, the] Amicis wished the court to consider a

lower figure based on net worth, *they should have introduced this evidence at trial.* We will not reward their failure to do so by reopening the proceedings at this stage.

*Id.* (emphasis added).

Here Ms. Littlefield did secure some testimony from Mr. McGuffey about his financial worth. He acknowledged owning three separate apartment buildings and having ten or eleven renters at the time. He also testified that the asking price for the unit Ms. Littlefield never occupied was $325. Obtaining further information about his net worth was obstructed by his "flagrant and persistent abuse of discovery," by his lies and fabrications, and by his using "every possible means to subvert Ms. Littlefield's legitimate discovery requests." *Littlefield,* 750 F.Supp. at 1402. McGuffey's penchant for obfuscation and outright obstructionism surfaced immediately at trial: in response to the first few questions put to him he testified his "occupation or business" was that of "janitor" but that he owned a three-story apartment building—the same building which contained the unit Ms. Littlefield attempted to rent. The district court concluded that it would "not permit Mr. McGuffey to seek shelter under the same principle that he has so flagrantly abused." *Littlefield,* 750 F.Supp. at 1402. Nor shall we.

Ms. Littlefield is not required to produce more evidence of McGuffey's financial worth than she did. Mr. McGuffey, on the other hand, could have introduced mitigating evidence of his financial worth. He chose not to do so and must now pay the piper.

## ATTORNEY'S FEES

■ In his final claim of error McGuffey asserts the fees awarded Ms. Littlefield's attorneys should be reduced to reflect what he claims are the reasonable hours spent on the litigation. McGuffey challenges only the district court's analysis of the facts not the methodology used in setting the attorney's fee. Consequently, the scope of review is quite limited and deferential. *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 973 (7th Cir.1991). A district

court's rulings on attorney's fees will rarely be reversed on appeal, and then only for abuse of discretion. *Federal Deposit Insurance Corp. v. O'Neil,* 809 F.2d 350 (7th Cir.1987); *Harman,* 945 F.2d at 973. Abuse of discretion occurs when, inter alia, a court "reaches a conclusion that no evidence in the record supports as rational." *Harman,* 945 F.2d at 973. "Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great to justify microscopic appellate scrutiny." *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988).

■ McGuffey, nonetheless, asks us to reduce the fee awarded from approximately $140,000 to nearly $50,000 by scrutinizing and excising some 473 individual time-charges, the largest of which is for 9.5 hours and the smallest of which is for 0.1 hours. This we shall not do.

The trial court followed appropriate legal standards and analytical procedures. It first found Ms. Littlefield was entitled to attorney's fees as the prevailing party in a federal claim. *Littlefield,* 750 F.Supp. at 1405 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Also, the federal statutes under which the claims arise contain fee-shifting provisions. 42 U.S.C.A. §§ 1988, 3613(c)(2) (West 1977, Supp.1991). The district court then analyzed the evidence and found the attorneys had "amply documented all of their time, . . . the time was reasonable and well spent, . . . [and t]here was no duplication of effort." *Littlefield,* 750 F.Supp. at 1405. She also noted that "[s]ignificant time was necessary . . . due to Mr. McGuffey's numerous lies, contradictions, and generally obstreperous conduct. . . . [Also, his] many frivolous arguments before and during trial had to be answered by a tortuous retracing of the often intricate facts. . . ." *Id.* The evidence in the record supports the finding of the district court; there was no abuse of discretion.

McGuffey also argues the amount of the fees awarded is disproportionately large compared to the damages awarded: approximately $140,000 versus $150,000. The

size of a damage award, however, is not the gauge of a plaintiff's victory. *Ustrak,* 851 F.2d at 989 (attorney's fees, after reduction by the appellate court, were 21 times as large as the damages). Rather, value is gauged more broadly: "A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but it is a deterrent to future violations, to the benefit of others in similar situations." *Id.* Ms. Littlefield prevailed on her federal law claims, receiving both compensatory and punitive damages. The latter certainly will punish McGuffey and, one hopes, deter him from further violations. The award is also likely to deter others. Therefore, we find the attorney's fees awarded are not unreasonable, and the award stands.

## ATTORNEY'S FEE MULTIPLIER

■ Ms. Littlefield argues in her cross-appeal that the district court erred in denying her request for a fee multiplier based on contingent risk. The standard of review, as stated above, is abuse of discretion, which "occurs [inter alia] when the court reaches an erroneous conclusion of law ... or reaches a conclusion that no evidence in the record supports as rational." *Harman,* 945 F.2d at 973; *see also Skelton v. General Motors Corp.,* 860 F.2d 250, 257 (7th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).

The pivotal case on the fee-multiplier issue raised here is *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*). The Court divided 4–1–4. The 4–vote plurality wrote that the fee-shifting provision of the Clean Air Act, 42 U.S.C. § 7604(d), did not permit a fee multiplier and, even if the provision did, it was not appropriate in that case. *Id.* at 711, 107 S.Ct. at 3079 (Opinion by White, J.). The 4–vote dissent wrote that the provision did permit a fee multiplier and that the case should be remanded for determination of the appropriate multiplier. *Id.* at 735, 107 S.Ct. at 3091 (Opinion by Blackmun, J., dissenting). Justice O'Connor agreed with the dissent that the Clean Air Act permitted a fee multiplier but concurred with the judgment of the plurality: a fee multiplier was not appropriate in the case at hand. *Id.* at 731, 107 S.Ct. at 3089 (Opinion by O'Connor, J., concurring).

In *Skelton* we examined *Delaware Valley II* and concluded the Supreme Court had held risk multipliers were not prohibited in statutory fee-shifting cases but had "set forth stringent requirements for awarding them." *Skelton,* 860 F.2d at 254. We also concluded that Justice O'Connor's position represented the majority of the Court. She had joined the dissent in the proposition that "compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class,* rather than on an assessment of the 'riskiness' of any particular case." *Delaware Valley II,* 483 U.S. at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring; emphasis in original). On the other hand, Justice O'Connor joined the plurality in limiting the factors a court can consider in determining a fee multiplier: "the 'novelty and difficulty of the issues presented, and ... the potential for protracted litigation,' *ante,* at 726, 107 S.Ct. at 3087, are factors adequately reflected in the loadstar.... [T]he District Court erred in employing a risk multiplier in the circumstances of this case." *Delaware Valley II,* 483 U.S. at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring).

What risk, then, is to be considered, and how is it to be measured? The *Delaware Valley II* plurality, Justice O'Connor concurring, stated the risk was that associated with losing a contingency-fee based case.

> In such cases, the attorney assumes a risk of nonpayment when he takes the case.... That risk is measured by the risk of losing rather than winning and depends on how unsettled the applicable law is with respect to the issues posed by the case and by how likely it is that the facts could be decided against the complainant.

*Delaware Valley II,* 483 U.S. at 715–16, 107 S.Ct. at 3081–82. The determination of what multiplier to apply, realizing that neither enhancement nor reduction may be

appropriate, is an *ex ante*, not an *ex post*, determination, made "without regard to most developments during discovery and litigation because it is designed to reflect the riskiness of the case at the outset." *Harman*, 945 F.2d at 976 (citation omitted).

In the present case, we cannot say the district court abused its discretion in denying Ms. Littlefield's attorneys a fee multiplier. Judge Williams did not rule a fee multiplier was inapplicable as a matter of law. Rather, she held that the risk to consider was "the risk of failure, and that risk just wasn't very large here. There were few novel legal issues, and the law and facts overwhelmingly favored Ms. Littlefield." *Littlefield*, 750 F.Supp. at 1406. The court considered the appropriate factors and properly applied the law from *Delaware Valley II*, *Skelton*, and *Harman*. She properly excluded from consideration McGuffey's obstructionist tactics, his "extraordinarily obstreperous conduct," his "stonewalling, machinations, and frivolous defenses," holding these factors increased attorney's time not risk. *Littlefield*, 750 F.Supp. at 1406. The court concluded, "The difficulty in this case stemmed entirely from the defendant's conduct which gave rise to the inordinate amount of time spent. Mr. McGuffey will now pay for every minute of that time." *Id.*

The court did refer to some *ex post* events: McGuffey's attempt to destroy or conceal evidence during a deposition, his profoundly inconsistent statements made from the witness chair, and his being "an easy target for cross-examination." *Id.* She did not, however, base her denial of a fee multiplier on these events. There are more than sufficient other events or factors, proper *ex ante* ones, to support Judge William's denial of a fee multiplier, and her holding relies on them. The court

stated, "Ms. Littlefield's attorneys had a respectable client who had been egregiously wronged." *Id.* This should have been clear to Ms. Littlefield's attorneys from the first few moments of their first conversation. No argument has been made that Ms. Littlefield was turned away by any attorney because of the risk of nonpayment or that her attorneys had any hesitancy in taking on her cause.[4] The risk of losing, the risk of nonpayment, must have appeared joyously small. Under these circumstances no fee multiplier is called for, and the district court did not abuse its discretion in granting none.

## CONCLUSION

Therefore, the judgment and orders of the District Court for the Northern District of Illinois, Eastern Division, are

AFFIRMED.

---

4. This is the same basis Justice O'Connor cited for denying a fee multiplier to the prevailing parties in *Delaware Valley II*: "Neither the findings [of the district court] nor the evidence indicate that the large enhancements in this case were necessary to attract competent counsel in the relevant community." *Delaware Valley II*, 483 U.S. at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring).