**William O. DANNHAUSEN and Gas Industries Equipment & Appliance News, Inc., Plaintiffs-Appellants,**

v.

**BUSINESS PUBLICATIONS AUDIT OF CIRCULATION, INC., Defendant-Appellee.**

No. 85–2619.

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1986.

Decided Aug. 11, 1986.

George W. Hamman, Hamman & Benn, Chicago, Ill., for plaintiffs-appellants.

Donald Flayton, Wildman, Harrold, Allen & Dixon, Chicago, Ill, for defendant-appellee.

Before BAUER, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

William Dannhausen, a citizen of Illinois, is the owner and publisher of a trade magazine entitled "Better Roads," and the principal owner of Gas Industries Equipment & Appliance News, Inc., an Illinois corporation that publishes a trade magazine entitled "Gas Industries." Both publications, through their publishers, were members of the defendant Business Publications Audit (BPA), a New York not-for-profit corporation having its principal office in New York. BPA expelled both publications for violating certain of its by-laws, and Dannhausen and Gas Industries Equipment ("Dannhausen") brought a diversity suit in district court complaining that the procedures that preceded the expulsion were unfair and contrary to BPA's by-laws. After a trial, a jury returned a verdict for BPA. Dannhausen appeals from the judgment, alleging that the district court erred in admitting certain evidence and instructing the jury. We find no error and affirm the judgment of the district court.

I.

Publications that sell advertising space need audited and certified circulation fig-

ures in order to attract advertising. BPA is an organization that generates such figures for its publisher members. In order to retain its membership in good standing, a publisher must furnish accurate circulation data to BPA, and BPA by-laws provide for suspension or expulsion of a member that makes fraudulent or misleading statements concerning its circulation. The by-laws further mandate that BPA follow certain procedures when charging a member with submitting false data, including serving the accused member with a complaint, providing notice of the BPA Executive Committee hearing on the matter, and permitting the member "to be present at the meeting and … to examine or cross-examine any witnesses produced before the Executive Committee, or to present such testimony, defense or explanation as he may have."

In October of 1976, BPA began to audit "Gas Industries" and "Better Roads" for the 1975–76 period. Auditors reported that they had problems with the audits because some of the circulation data was overstated and because Dannhausen failed to provide BPA with a mailing list for either publication. In December 1976, Dannhausen received formal notice that complaints had been filed and that the Executive Committee would meet on January 12, 1977 to review the charges. The notice also informed Dannhausen of his rights under the by-laws to be present at the meeting and to "present any testimony, evidence, explanation and examine or cross-examine any witness."

Prior to the January 12 meeting, Dannhausen communicated with several present or former BPA officials regarding the audit problems and the Executive Committee's procedures, and received copies of the auditors' report for each of his publications. Dannhausen then attended the January 12 meeting. Before he was allowed to enter the meeting room, however, members of BPA's staff made a presentation concerning the charges to the Executive Committee. After this presentation, Dannhausen was permitted to enter the meeting, where he presented a statement, distribut-

ed materials, and questioned the auditors. Dannhausen was informed that the staff had made a presentation before he was admitted, and the staff was present throughout the meeting. The following day, BPA's Executive Committee voted to expel "Better Roads" and "Gas Industries" from the association.

Pursuant to the by-laws, Dannhausen brought the Executive Committee's decision before BPA's Board of Directors. Dannhausen was notified of the Board's meeting and was invited to attend. Again, however, Dannhausen was permitted to enter the meeting room only after staff members presented the charges to the decision-making body. The Board affirmed the expulsion of "Better Roads," but since Dannhausen had finally provided a mailing list for "Gas Industries," the Board merely placed it on probation and assessed over-time audit charges in accord with the by-laws. After Dannhausen failed to pay these charges, BPA terminated "Gas Industries" as well, and pursuant to the by-laws, BPA circulated notices among publishers and advertisers that it had expelled the two publications.

Dannhausen filed the present diversity action in September of 1979, alleging on behalf of each publication that BPA had breached its by-laws and violated fundamental fairness by refusing Dannhausen admittance to the Executive Committee and Board meetings until after staff presentations had been made. Dannhausen sought damages for lost advertising revenues in the amount of $175,000 for "Better Roads" and $50,000 for "Gas Industries," as well as costs and expenses incurred. Dannhausen also alleged that by notifying advertisers of the expulsions, BPA had intentionally interfered with the business expectancies of each publication, and sought lost advertising revenues proximately resulting from the tortious conduct, as well as punitive damages. The cause was tried before a jury in July and August of 1985, after which the jury returned a verdict for BPA on all counts. Dannhausen filed a motion for a new trial alleging that the district

court erred in admitting evidence concerning the merits of BPA's charges against the Dannhausen publications and in instructing the jury that Dannhausen bore the burden of proving that his damages were proximately caused by BPA's wrongful conduct; the district court denied that motion on August 27, 1985. Dannhausen now appeals that denial.

## II.

Under Illinois law, as in most states, judicial inquiry into the affairs of private, voluntary associations is limited to the question of whether an association has treated its members in accord with its by-laws and rudimentary due process. *Duby v. American College of Surgeons*, 468 F.2d 364, 367–68 (7th Cir.1972); *Van Daele v. Vinci*, 51 Ill.2d 389, 282 N.E.2d 728 (1972); *Virgin v. American College of Surgeons*, 42 Ill.App.2d 352, 192 N.E.2d 414 (1963). Accordingly, courts refuse to investigate the merits of an association's decision to expel a member. *See e.g., Jackson v. American Yorkshire Club*, 340 F.Supp. 628, 635 (N.D.Iowa 1971). Dannhausen's claim of evidentiary error is based on this proposition, since he alleges that by allowing into the trial evidence going to the merits of BPA's decision to expel his publications, the district court erroneously embroiled the judiciary in the private association's affairs. Dannhausen fails to recognize, however, that the jury would have to consider the merits of BPA's expulsion decision in the context of determining whether BPA's conduct, even assuming it was wrongful, *caused* Dannhausen's expulsion, or whether BPA would have expelled him even had it accorded him the procedures he was due.

The issues raised in Dannhausen's appeal, then, clearly are interrelated: *if* the trial court was correct when it instructed the jury that in order to find for Dannhausen it had to find that "the denial of [the] opportunity to be present during the BPA staff presentation was the proximate cause of the expulsion of plaintiffs' publications," *then* the trial court also was correct when

it ruled that evidence relating to the merits of the expulsion was relevant to this issue of proximate cause. Thus Dannhausen's appeal comes down to one issue: under Illinois law, did Dannhausen have the burden of proving that his damages were caused by BPA's wrongful conduct? Merely to state the issue is to answer it, for it is a universal tenet of American jurisprudence that a plaintiff must prove his damages to be the "proximate result of the complained of wrong." *Classic Bowl, Inc. v. AMF Pinspotters, Inc.*, 403 F.2d 463, 467 (7th Cir.1968). *See also, e.g., Callier v. Callier*, 142 Ill.App.3d 407, 96 Ill.Dec. 459, 491 N.E.2d 505, 512 (1986). Dannhausen has pointed out nothing that abrogates the rule of causation in this context, other than his insistence that courts are prohibited in *all* circumstances from evaluating the merits of the association's decision. But adoption of his position would, as was pointed out during oral argument, turn what is viewed as a shield for private associations into a sword to be used against them, since litigants would find it much easier to get damages without having to prove causation. We hold, therefore, that although Illinois law does not permit courts to adjudicate the merits of private associations' decisions, evidence concerning those merits may be admissible on the issue of causation of the claimed damages. Thus, the district court committed no error when it instructed the jury that Dannhausen had the burden of proving that BPA's wrongful conduct proximately caused his damages, and when it permitted the jury to evaluate evidence on the question of whether BPA likely would have expelled Dannhausen even had it followed correct procedures.

Two small issues remain. First, Dannhausen suggests that even if he is required to prove causation, all he need establish is (a) that BPA's procedures were faulty and therefore the expulsion decision is *void*, and (b) that the *expulsion* proximately caused his lost advertising revenues. This argument is nonsensical. Dannhausen sought only money damages in his suit; he thus sought compensation

for what BPA allegedly did wrong, i.e., allow a staff presentation outside of his hearing. Dannhausen cannot avoid the fact that in order to receive such compensation, he must demonstrate the harm that the staff presentation caused him. Had Dannhausen sought to void BPA's decision and win a new hearing, he may under Illinois law have been successful, but he would have had to bear the risk of getting expelled after the rehearing. Allowing him to avoid this risk while at the same time awarding him damages without proof of causation would, in effect, overcompensate him.

The final question raised by this case concerns nominal damages. Association by-laws are in the nature of contracts among associations and members, and conduct that violates by-laws is akin to a breach of contract. Thus, had BPA been guilty of a breach of its by-laws, Dannhausen may have been entitled to nominal damages even if he could not prove his consequential damages. *See Harman v. The Washington Fuel Co.*, 228 Ill. 298, 301, 81 N.E. 1017 (1907). The court did not instruct the jury that it could award nominal damages. Nevertheless, we will not reverse for this failure since Dannhausen declined to seek nominal damages in his prayer for relief or in his tendered jury instructions. Moreover, Illinois courts apply the maxim *de minimis non curat lex* and "will never reverse a judgment and award a new trial merely for the purpose of enabling a party to recover nominal damages." *Checkley v. Illinois Central Railroad Co.*, 257 Ill. 491, 500, 100 N.E. 942 (1913).

For these reasons, the judgment of the district court is AFFIRMED.