**Diann R. TIMMERMAN, Personal Representative of the Estate of Ronald D. Timmerman, Deceased, Plaintiff–Appellant,**

v.

**MODERN INDUSTRIES, INC., a corporation, Defendant–Appellee.**

**No. 91–1789.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1992.

Decided April 6, 1992.

Mark M. Silvermintz, Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, East St. Louis, Ill., Karen L. Kendall, Gary M. Peplow, Heyl, Royster, Voelker & Allen, Peoria, Ill., and David L. Buelt (argued), and Michael D. Jones, Ellick, Jones, Buelt, Blazek & Longo, Omaha, Neb., for plaintiff-appellant.

James K. Horstman (argued), C. Barry Montgomery, Michael D. Huber, and Lisa L. Lantero, Williams & Montgomery, Chicago, Ill., for defendant-appellee.

Before EASTERBROOK and KANNE, Circuit Judges, and ALLEN SHARP,[*] District Judge.

## I.

ALLEN SHARP, District Judge.

This is an appeal from a wrongful death action. The plaintiff-appellant (hereinafter appellant) is a citizen of the State of Nebraska and defendant-appellee (hereinafter appellee) is a corporation with its principal place of business in Kentucky. The case was tried to a jury in the United States District Court for the Southern District of Illinois on the basis of diversity of citizen-

[*] The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana, sitting by designation.

ship, 28 U.S.C. § 1332, by application of the substantive law of Illinois. On November 16, 1990, the jury returned a verdict for the appellee. Following the denial by the district court of post-trial motions, a final judgment was entered for the appellee and against the appellant. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons stated below, we affirm the decision of the district court.

The appellant raises three issues: (1) whether the district court erred in instructing the jury regarding the open compartment door; (2) whether the district court erred in denying her motion for directed verdict; and (3) whether she is entitled to a new trial because the verdict for the appellee is against the manifest weight of the evidence.

## II.

As indicated, this is a wrongful death action filed in the Southern District of Illinois by the estate of Ronald D. Timmerman against Modern Industries, Inc. The incident in question occurred near mile marker 61 on Interstate 64 in Washington County, Illinois, on December 17, 1987, when Ronald D. Timmerman and his co-driver, Kevin Phillips, were operating a truck tractor semi-trailer rig on their way to Florida from Omaha, Nebraska. While proceeding on Interstate 64 through Illinois toward Florida, their truck developed mechanical problems suspected to be a faulty fuel filter. At the time in question, Timmerman was driving the truck, and Phillips was riding in the sleeper cab.

Timmerman pulled the truck off the travelled portion of the road and onto the paved shoulder. After stopping the truck, Timmerman got out of the truck, and Phillips came up from the sleeper cab and sat in the driver's seat. Phillips noted that the truck had all of its lights on, including the emergency flashers, when Timmerman got out of the truck. Phillips observed Timmerman walk to the front of the truck and open the hood of the truck tractor. Timmerman then walked along the left side of the truck to the vicinity of a compartment

behind the driver's door. Phillips heard the compartment door latch open, and almost immediately, he felt his truck rock and was aware of another tractor trailer passing to his, Phillips', left. He saw that the driver's side rearview mirror on the Timmerman truck was smashed. He observed the truck of the appellee, Modern Industries, proceeding beside and ahead of his vehicle and pulling to a stop off the shoulder of the interstate highway. Both trucks were travelling in an easterly direction. Phillips saw Timmerman's body, which had been struck by the appellee's vehicle, thrown down, and taken through the right rear dual tires of the Modern Industries' trailer. The jury saw very gruesome photographs depicting the same.

The accident was investigated by Illinois State Trooper Roger Walker, who took measurements to mark the location of the Timmerman vehicle at the time of the accident. To document the location of the Timmerman vehicle, Trooper Walker placed marks on the paved shoulder as reference points for various measurements.

The highway at the scene of the accident is an east/west interstate highway passing through rural countryside. There are two eastbound lanes and two westbound lanes divided by a grassy median. The eastbound travelled portion of the highway is 24 feet wide with a painted hash mark in the center of the pavement dividing the travelled portion into two 12-feet wide lanes. The outer edge of each eastbound lane is marked by a four inch painted fog line. The right-hand, eastbound lane has a ten-foot wide asphalt-surfaced shoulder to its right. The accident occurred on December 17, 1989, at approximately 12:15 a.m. The night was cold with no snow or ice on the road or shoulder. Visibility was clear, and there was an unobstructed view approaching the accident site. An eastbound driver approaching the accident site from the west would have a clear field of vision for at least 1,600 feet.

Trooper Walker placed the location of the Timmerman truck two feet off the travelled portion of the highway and marked the location of that truck's left-side tires

with marks on the shoulder. Walker testified that, after making the marks and taking measurements, it was his custom to round the measurements to the nearest foot.

Other measurements were made by Arnold Pavlovic, an accident reconstruction expert, who inspected the scene at the request of the Timmerman estate. Using the marks made by Trooper Walker, Pavlovic measured the rear trailer tire position to be 20 inches south, or to the right of the middle of the four-inch painted fog line. The front of the cab of the tractor trailer measured 23 inches south of the middle of the fog line.

The only other estimate of the Timmerman vehicle was made by Sylvanus Walker, an accident reconstruction expert retained by the appellee. By the time this accident reconstruction expert got to the scene, the marks made by Trooper Walker were no longer visible. Therefore, Sylvanus Walker made estimates of the distance between the fog line on the travelled portion of the highway and the location of the Timmerman vehicle by examining photographs taken at the scene of the accident. Sylvanus Walker concluded that the rear of the Timmerman vehicle was 14 inches to the right of the edge of the fog line, and the front of the Timmerman vehicle was 16 inches to the right of the edge of the fog line.

Damage to both the Timmerman vehicle and the appellee's vehicle was examined at the scene of the accident. There was conflicting evidence as to damage caused by the accident to the left rear of the Timmerman trailer. There were scuff marks on the left rear tires of the Timmerman trailer at equal heights and parallel to the ground. According to the testimony of Kevin Phillips, these marks did not exist before the accident. Trooper Walker considered the scuff marks to be a result of contact between the vehicles involved in the accident. This conclusion was disputed by Sylvanus Walker.

There was a compartment door on the left side of the Timmerman vehicle, and it was damaged. This door was located behind the driver's side door. There was

damage to the exhaust pipe guard and vertical grab handle on the left side of the Timmerman cab. The left-side rearview mirror on the Timmerman vehicle was damaged.

The damage to Modern Industries' vehicle consisted of a vertical crease on the front portion of the rounded right-hand corner of the cab. There was also damage to the grab handles of the ladder on the right-side of Modern Industries' cab. Also, the right-side mirror and right-side turn signal on Modern Industries' cab were knocked off. There were also scrubbing or rub marks both by the rail ladder on the right side of Modern Industries' cab. The grab bar located above the door on the right side of the cab was knocked off.

Debris was found consisting of Modern Industries' rear-view mirror located some distance in front of the Timmerman cab. Tire tracks from the rear dual tires of Modern Industries' trailer were imprinted on the pavement surface by blood and body fluids from Timmerman's body.

The Modern Industries' truck was driven by James T. Scott, who was travelling eastbound on Interstate 64 at approximately 55 miles per hour at the time of the accident. Scott stated that he did not see the Timmerman vehicle until he was only 250 feet away, although there was a clear line of sight of more than 1,600 feet. Scott testified that his headlights were on and in good working order, that he never saw Timmerman, but that he heard a thump as he passed the Timmerman vehicle. Scott stated that before noticing the Timmerman vehicle 250 feet away, he first noticed a third vehicle in the left lane which was passing him. Modern Industries' vehicle was eight feet wide, and Scott described no impediment to his vehicle in proceeding along the 12–feet wide eastbound travelled portion of the interstate highway. After hearing the sound as he passed the Timmerman vehicle, Scott stopped his vehicle and backed off the highway. He acknowledged that the Timmerman vehicle had its emergency flashers on.

Ronald Timmerman was pronounced dead at the scene of the accident as a result

of injuries sustained by the collision here described. His wife, Diann Timmerman, the duly appointed personal representative of his estate, filed the complaint for this wrongful death action. It should be mentioned here that the complaint also asserted a claim for property damage to the door on the Timmerman truck. As indicated, a jury after hearing the evidence in this case, hearing arguments, and being instructed, determined that Timmerman was more than 50% negligent, precluding any recovery under the Illinois Comparative Negligence Act. *See* Ill.Ann.Stat., ch. 110, ¶ 2–1116 (Smith–Hurd Supp.1991).

### III.

Judge Beatty, after conducting a full and complete proceeding under Rule 51 of the Federal Rules of Civil Procedure, gave the following instruction over the appellant's objection:

No person shall open the door of a vehicle on the side available to moving traffic unless and until it is reasonably safe to do so, and can be done without interfering with the movement of other traffic, nor shall any person leave a door open on the side of a vehicle available to moving traffic for a period of time longer than necessary to load or unload passengers. (Ill.Rev.Stat.1989, ch. 95½, par. 11–1407; Defendant's Instruction 29).

The precise objection made to the giving of the aforesaid instruction by counsel for the plaintiff was as follows:

Your Honor, one more point to take up. I want to register an objection to the giving of defendant's Instruction Number 29. The basis for the objection is the fact that the question whether the door was or was not over any portion of the fog line or to the north of it as Mr. Montgomery just said, if there is no proximate cause causation between that and the injury complained of, then the statute, or regulation has no place in the jury instructions. Here I think all the evidence is that no matter where you would have placed that door, Ron Timmerman would be just as dead, and I don't think the question of location of the

door and whether it was or was not impinging on the traveled roadway has anything to do with this wrongful death action.

*Transcript,* pp. 537–41.

■ A court of review should "proceed cautiously when asked to set aside a jury's verdict and order a new trial, bound to consume substantial judicial resources, on the ground that the instructions contained erroneous or confusing passages." *Littlefield v. McGuffey,* 954 F.2d 1337, 1344 (7th Cir.1992); *Needham v. White Laboratories, Inc.,* 847 F.2d 355, 360 (7th Cir.1988). *See also Bruno v. City of Crown Point,* 950 F.2d 355, 360 (7th Cir.1991). Our review of jury instructions is limited; they should be construed in their entirety, not in isolation; and reversal is mandated only "if the jury's comprehension of the issues is so misguided that a litigant is prejudiced." *Littlefield,* 954 F.2d at 1344, and *Goldman v. Fadell,* 844 F.2d 1297, 1302 (7th Cir. 1988).

The appellant contends that because the jury could have concluded, on the basis of defendant's Instruction No. 29, that the decedent's contributory negligence amounted to more than 50% of the total negligence, severe prejudice resulted from the district court's giving of said instruction.

■ Illinois law controls the propriety of the challenged jury instruction, because federal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law, including the substance of jury instructions. *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988); *Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591, 595 (7th Cir.1985) and *Littlefield,* 954 F.2d at 1344. The law in Illinois is well established that "a jury instruction is justified if it is supported by some evidence in the record." *Littlefield, id.,* and *Caballero v. Royston,* 219 Ill.App.3d 477, 162 Ill.Dec. 180, 579 N.E.2d 994, 997 (1st Dist.1991).

Judge Beatty was entirely correct when he emphasized that there was indeed a property damage claim, the damage to Timmerman's door, in the complaint filed on

behalf of the decedent. It is elementary that a plaintiff certainly has control over the allegations in a complaint, and, here, no effort whatsoever was made by counsel for the appellant to either dismiss the property damage claim and take its consideration away from the jury or to request the district judge to limit this instruction to that issue. Additionally, the question of where the vehicles were located, where the decedent was when he was hit, and the position of the door, are all a part of the factual mix which was presented to the jury for its consideration in this case.

Under all of these circumstances, it was not error for the district court to give the aforesaid instruction.

### IV.

The next issue demands very little discussion. Certainly, the plaintiff in this case had the basic burden of proof and burden of persuasion with regard to the wrongful death claim. The plaintiff-appellant now complains that the district court should have directed a verdict in her favor on the issue of the defendant's negligence.

■ When reviewing directed verdicts in diversity cases, we use the state's standard of review. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1393 (7th Cir. 1991); *H.B. Fuller Co. v. Kinetic Systems, Inc.*, 932 F.2d 681, 686 (7th Cir.1991) (quoting *Consolidated Bearings v. Ehret–Krohn Corp.*, 913 F.2d 1224, 1227 (7th Cir.1990)). In Illinois, "[a] verdict should not be directed unless 'all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.'" *Williams v. Jader Fuel Co., Inc.*, 944 F.2d at 1393; *Darnell v. Impact Industries, Inc.*, 105 Ill.2d 158, 162, 85 Ill.Dec. 336, 338, 473 N.E.2d 935, 937 (1984) (quoting *Pedrick v. Peoria & E.R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967)). Applying this standard, it is clear that the district court properly refused to direct a verdict on the issue of the appellee's negligence. The evidence was overwhelming that the appellee's truck never entered upon the shoulder where the decedent and his vehicle were located. Thus, the district court simply could not conclude that the appellee was guilty of negligence as a matter of law.

### V.

The appellant's final assertion is that she is entitled to a new trial because the verdict for the appellee is against the manifest weight of the evidence. After the verdict for the appellee, the appellant moved for judgment notwithstanding the verdict or for a new trial. These motions were denied.

■ In diversity cases, state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict. *Twin Disc, Inc. v. Big Bud Tractor*, 772 F.2d 1329, 1336 (7th Cir.1985); *Fort Howard Paper Company v. Standard Havens, Inc.*, 901 F.2d 1373, 1382 (7th Cir.1990). In Illinois, a judgment not withstanding the verdict should be entered "only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d at 510, 229 N.E.2d at 513; *People v. Beehn*, 205 Ill.App.3d 533, 151 Ill.Dec. 101, 563 N.E.2d 1207 (4th Dist. 1990).

■ This court reviews a district court's denial of a motion for judgment notwithstanding the verdict de novo. *Fort Howard Paper Company v. Standard Havens, Inc.*, 901 F.2d at 1382; *Siddiqi v. Leak*, 880 F.2d 904, 908 (7th Cir.1989). In such review, we must determine whether there is sufficient evidence to support the jury's verdict. "This court will not reweigh or reevaluate the evidence—that task is reserved to the jury as factfinder." *Id.* at 908. The appellee presented overwhelming evidence that not only was the driver of its vehicle not negligent, but that the decedent's own negligence constituted over 50% of the proximate cause of the accident. Accordingly, our review of the record leads

us to conclude that there was sufficient evidence to support the jury verdict. Furthermore, this case was fully and completely presented to a trier of fact under the Seventh Amendment of the Constitution of the United States under the substantive law of the State of Illinois, including its Comparative Fault Act. It is not the proper function of this court to weigh or reweigh the evidence or to second-guess this constitutionally honored trier of fact. It is for this court to determine whether or not the above-described evidence was enough to support the jury's verdict, and it was. Moreover, even if the district judge were to have expressed disagreement with the way in which the jury chose to weigh the evidence, which he did not do here, it would be inappropriate for that district judge to reverse the verdict of the jury on that basis. *See Foster v. Continental Can Corp.*, 101 F.R.D. 710 (N.D.Ind.1984), *aff'd*, 783 F.2d 731 (7th Cir.1986). We, therefore, affirm the district court's denial of the appellant's motion for judgment notwithstanding the verdict.

The district court also denied the appellant's motion for a new trial. The test to be applied in determining whether a motion for a new trial should be granted is whether the verdict is against the weight of the evidence, that the damages were excessive, or that, for other reasons, the trial was not fair to the party moving. *Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990); *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989) (quoting *General Foam Fabricators v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 288 (7th Cir.1982). As we stated in *Cygnar:*

> because the authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court, ... the grant or denial of a motion for new trial is not subject to review by this court, except upon exceptional circumstances showing a clear abuse of discretion.

865 F.2d at 835 (quoting *General Foam*, 695 F.2d at 288).

At trial, a substantial amount of evidence was presented by the appellee which estab-lished that the decedent was at least 51% at fault in this highway tragedy, thereby precluding any recovery under the Illinois Comparative Negligence Act. Ill.Ann. Stat., ch. 110, ¶ 2–1116 (Smith–Hurd Supp. 1991). Accordingly, we do not believe a reversal of the district court's denial of the appellant's motion for a new trial is warranted.

There is no basis here stated for the reversal of the jury verdict and the granting of a new trial. Therefore, the decision of the district court is affirmed.

AFFIRMED.