9 F.3d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David G. STAUFFACHER, Plaintiff-Appellant,
v.
TELEDYNE CONTINENTAL MOTORS, Defendant-Appellee.
 No. 92-2686.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 29, 1993.
Decided Nov. 8, 1993.
Rehearing and Suggestion for Rehearing En Banc
Denied Dec. 7, 1993.
 
 Before FLAUM, MANION and ILANA D. ROVNER, Circuit Judges.
 
 ORDER
 
 1
 David Stauffacher sued Teledyne Continental Motors after encountering a series of mechanical problems with the Teledyne engine in his Piper Malibu aircraft.[1] In the first of two trials, the jury returned a verdict in favor of Stauffacher in the amount of $75,000. Finding the verdict to be against the weight of the evidence, the district court ordered a new trial, in which it subsequently granted judgment as a matter of law in favor of Teledyne. Stauffacher appeals. Upon review of the record, we find that Stauffacher failed at either trial to prove damages with reasonable certainty. On that ground, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 Stauffacher is a Wisconsin resident who purchased a Piper Malibu in April 1987 from Mid-America Aviation, Inc. The Piper Malibu is a single engine aircraft equipped with a TSIO-520-BE engine manufactured by Teledyne Continental Motors, a division of Teledyne Industries, Inc. At the time of purchase, Stauffacher received a limited warranty from Teledyne known as the "Gold Medallion Elite Warranty," which provided for repair or replacement of any defective part at Teledyne's cost until twelve months or 1,000 engine hours, and pro rata coverage thereafter until 2,000 hours.[2]
 
 
 3
 Stauffacher's difficulties with the engine began in August 1987, at 151 engine hours. While en route one night from Aurora, Illinois to Madison, Wisconsin, the starter assembly shaft broke, causing the engine to lose 7.5 of its 8 quarts of oil. Stauffacher was forced to glide from an altitude of 6,500 feet to an emergency landing in Rockford, Illinois. Teledyne paid for replacement of the starter adapter gearbox assembly and provided Stauffacher with a new warranty.
 
 
 4
 Following the Rockford incident, Stauffacher encountered multiple mechanical problems that required replacement of defective engine parts on several occasions, culminating in the replacement of the entire engine in October 1990. On his mechanic's advice, Stauffacher opted to purchase a remanufactured engine rather than an entirely new engine. Because the engine being replaced had over 1,000 hours on it, Stauffacher paid a pro-rata price of $23,000 for the remanufactured engine in accordance with the warranty.[3] The remanufactured engine later required the replacement of a cracked starter adapter assembly main housing, but as of the second trial in June of 1992, Stauffacher had encountered no other difficulties with the engine.
 
 
 5
 On November 27, 1990, Stauffacher commenced a diversity action against Teledyne asserting claims for breach of warranty, fraud, and strict liability. Although the court disposed of the fraud and strict liability claims,[4] it allowed the breach of warranty claim to reach the jury. At trial, Stauffacher attempted to show that his Piper Malibu aircraft had lost value as a result of the repeated engine problems; he also testified that engine difficulties had forced him to make substantial expenditures. Finding that Teledyne had in fact breached an express warranty to Stauffacher (beyond the Gold Medallion Elite Warranty), the jury awarded $75,000 in compensatory damages. R. 74.
 
 
 6
 The district court granted Teledyne's motion for a new trial on the ground that the jury's verdict was against the weight of the evidence. In her opinion and order, Chief Judge Crabb found the evidence insufficient to support a claim for breach of warranty or to show any damages. In the latter regard, she found that the evidence purportedly showing that Stauffacher's plane had lost value was far too speculative and that the alleged expenditures due to engine problems were never set forth in a clear, itemized form. Stauffacher v. Teledyne Continental Motors, No. 90 C 903, Mem.Op. at 10-12 (W.D.Wis. Feb. 26, 1992).[5]
 
 
 7
 At the second trial, Stauffacher offered little in the way of new evidence to support an award of damages or to establish a breach of warranty. At the close of Stauffacher's case, the district court granted judgment as a matter of law in favor of Teledyne. Tr. 2-54-84. Stauffacher appeals the granting of both a new trial and judgment as a matter of law.
 
 II. ANALYSIS
 
 8
 In scattershot fashion, Stauffacher seemingly challenges virtually every substantive and evidentiary decision of the district court. Because, after a close review of the record, we have concluded that Stauffacher failed to establish with a reasonable degree of certainty any damages and that this failure was not due to any error of the district court, we find it unnecessary to address the issues pertaining to Teledyne's liability. Without a showing of damages, Stauffacher has no basis to seek reversal on either his breach of warranty claim or his claims of fraud and strict liability, which did not reach the jury.
 
 
 9
 With most tort claims, damages are an element of the claim itself. E.g., Warner/Elektra/Atlantic Corp. v. County of DuPage, 991 F.2d 1280, 1282 (7th Cir.1993) ("as we tirelessly repeat, ... without an injury there is no tort"). Of course, Stauffacher's warranty claim was contractual in nature, and a plaintiff can recover nominal damages for breach of contract without proving any actual loss. Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1372 (7th Cir.1990) (citing, inter alia, Vasselos v. Greek Orthodox Community of St. Spyridon, 129 N.W.2d 243 (Wis.1964)). At the same time, we will not reverse the dismissal of such a claim merely to allow recovery of nominal damages where the appellant failed to seek nominal damages in his prayer for relief or tendered jury instructions. Dannhausen v. Business Publications Audit of Circulation, Inc., 797 F.2d 548, 552 (7th Cir.1986). See also Sinden v. Laabs, 141 N.W.2d 865, 867 (Wis.1966). That is so here. R. 2 at 13 p 29; R. 21 at 22 pp 30-31; R. 44, "Plaintiff's Proposed Form of Special Verdict" at 4 Q. 11, "Plaintiff's Proposed Additional Jury Instr. No. 4" at 4; Tr. 2-B-34-35.[6] A failure to show any damages would therefore be dispositive in Teledyne's favor.[7]
 
 
 10
 Although damages need not be shown with mathematical precision, they must be established with reasonable certainty. Ma v. Community Bank, 686 F.2d 459, 466 (7th Cir.), appeal dismissed and cert. denied, 459 U.S. 962 (1982); see also Olympia Hotels, 908 F.2d at 1372. Granted, when the nature of the injury leaves the full extent of damages uncertain, the defendant cannot use this uncertainty to his advantage. Id. at 1373; Novo Indus. Corp. v. Nissen, 140 N.W.2d 280, 285 (Wis.1966). Stauffacher's case does not fall into this category, however. Whatever unique characteristics an airplane engine might possess, Stauffacher was in no way precluded from establishing damages in a straightforward fashion. Typical measures might include the difference in value between the engine he owns and the value of an engine that complied with all warranties, the loss in the market value attributable to any defects in the engine, the repair costs borne by Stauffacher, and the costs at times when the engine (and thus the plane) was not usable. See Wis.Stat.Ann. §§ 402.714, 402.715 (West 1964 & Supp.1992); see also Murray v. Holiday Rambler, Inc., 265 N.W.2d 513, 525-27 (Wis.1978). Even when damages are uncertain by their very nature, the evidence should at the very least "lay a foundation which will enable the trier of fact to make a fair and reasonable estimate...." Essock v. Mawhinney, 88 N.W.2d 659, 665 (Wis.1958) (quoting 15 Am.Jur. Damages § 23, at 414-15).
 
 
 11
 Our essential task is thus to determine whether the evidence "enable[d] the jury to come up with a figure that represents a reasonable estimate of the plaintiff's damages." Olympia Hotels, 908 F.2d at 1372. We will do so in the context of addressing three separate but related questions: (1) whether the district court abused its discretion in granting a new trial on the issue of damages; (2) whether the district court erred at the second trial in granting judgment as a matter of law in favor of Teledyne based in part on the lack of adequate proof of damages; and (3) whether Stauffacher was prevented from showing damages due to an error of the district court.
 
 
 12
 A. Sufficiency of Damages Evidence at First Trial and the District Court's Decision to Grant a New Trial
 
 
 13
 We review the district court's grant of a new trial for abuse of discretion. Timmerman v. Modern Indus., Inc., 960 F.2d 692, 698 (7th Cir.1992). A new trial is appropriate when the verdict goes against the weight of the evidence or when the award of damages is excessive. Id. Upon review of the record, we agree with the district court that the evidence presented at the first trial supplied no reasonable basis for an assessment of damages, let alone the $75,000 that the jury awarded Stauffacher.
 
 
 14
 Stauffacher argues that the $75,000 verdict could have been based on a combination of factors. The first basis for the award, Stauffacher contends, is the depreciation in the market value of the plane, from the $463,000 purchase price to the $245,000 that Kenneth Rittenhouse (owner of Mid-America Aviation, the Piper dealer and distributor from which Stauffacher purchased his plane) and Patrick Beatty (service manager for Clark and Mid-America Aviation) estimated it was worth at the time of trial. See Tr. 1-B-49, 1-B-91-93. This contention is based on the notion that because no other engine is certified for use in the Piper Malibu and because, in Stauffacher's view, the Teledyne engine is inherently unreliable, the plane as a whole is worth much less than Stauffacher paid for it. Yet, the depreciation in the aircraft's overall value would supply a basis for damages only if the evidence also established what the depreciation of a Malibu otherwise would have been with an engine that had performed problem-free in the more than four and one-half years Stauffacher had owned it. Without such a basis for comparison, the jury could only speculate as to what portion of the depreciation, if any, was due to the purported defects in the Teledyne engine.[8]
 
 
 15
 The testimony of Rittenhouse, which Stauffacher relies on as a second basis for the jury's award, suffers from a similar defect. In addition to Mid-America Aviation, Rittenhouse owns three other aviation companies. Rittenhouse testified that Stauffacher's plane had depreciated $75,000 in the prior year due to three factors: (1) a problem with the No. 2 main bearing in the engine which had resulted in an airworthiness directive requiring periodic inspections; (2) a problem with the air frame of the plane which had resulted in a separate airworthiness directive as well as the grounding of the entire Malibu fleet for a period of time; and (3) Piper's recent bankruptcy, which would cause potential buyers to wonder about such matters as warranty support on Piper planes. Tr. 1-B-93-99. When Rittenhouse was asked to apportion the $75,000 depreciation, however, he was unable to make any estimate as to what amount of depreciation resulted from the problem with the engine. Tr. 1-B-95-96, 1-B-99. As the district court aptly noted, any attempt to award damages based on this testimony would constitute "pure speculation." Stauffacher v. Teledyne Continental Motors, No. 90 C 903, Mem.Op. at 11 (W.D.Wis. Feb. 26, 1992).
 
 
 16
 As a third and final basis for the damages award, Stauffacher relies on the expenditures that he made in connection with his engine difficulties. Stauffacher did testify that he had incurred approximately $35,000 in engine-related expenses that were not covered by Teledyne (Tr. 2-A-56, 2-A-63), and he prepared an exhibit listing individual expenditures totalling $34,711.57 (Plaintiff's Ex. No. 6). However, Stauffacher acknowledged that these charges included his pro-rated share of the cost for the remanufactured engine (Tr. 2-A-70-71), and he also seemed to admit that several charges were for work done on items that were not part of the engine (Tr. 2-A-73, 2-A-74-75). Moreover, the exhibit itself was not itemized in any fashion, instead simply listing amounts spent by date, without any explanation of the work underlying the expenses and without any attempt to show how these expenditures were the result of any defect in the Teledyne engine. Although Stauffacher did introduce into evidence the invoices reflecting the work done on his plane (Plaintiff's Ex. No. 10), he offered no analysis or explanation of those invoices that would permit a lay jury to identify expenditures that were in some way attributable to engine problems. Thus, even if some of these expenses were due to flaws in the engine, the evidence did not enable the jury to determine which of them fell into this category. Once again, therefore, the jury was left without a basis on which to make anything but a guess as to Stauffacher's damages.
 
 
 17
 Because Stauffacher neglected at the first trial to offer any evidence that afforded a reasonable basis for the jury to ascertain damages, the district court did not abuse its discretion in ordering a new trial.
 
 
 18
 B. Sufficiency of Damages Evidence at Second Trial and the District Court's Decision to Grant Judgment as a Matter of Law in Favor of Teledyne
 
 
 19
 At the close of the plaintiff's case at the second trial, the district court granted Teledyne's motion for judgment as a matter of law. As it had in granting the new trial, the district court again concluded that Stauffacher had failed to present evidence from which the jury could reasonably conclude either that Teledyne had breached any warranty to him (Tr. 2-57-58, 2-60-61) or that the Gold Medallion Elite Warranty had failed of its essential purpose (Tr. 2-82-84) or from which the jury could make a reasonable estimate of his damages (2-72-76). We review this decision de novo. Garrett v. Barnes, 961 F.2d 629, 632 (7th Cir.1992); James v. Milwaukee County, 956 F.2d 696, 698 (7th Cir.), cert. denied, 113 S.Ct. 63 (1992). "A judgment n.o.v. [or directed verdict] should be denied where the evidence along with the inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." Garrett, 961 F.2d at 631 (internal quotation marks omitted).
 
 
 20
 However, if the non-movant presents insufficient evidence upon which a reasonable person could properly base a verdict in his favor, judgment as a matter of law for the movant is appropriate. Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1213 (7th Cir.1985). Moreover, a mere scintilla of evidence will not prevent a directed verdict. Id.; see also La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1410 (7th Cir.1984).
 
 
 21
 James, 956 F.2d at 698. Having reviewed the evidence presented at the second trial, we agree with the district court that the evidence was not adequate to establish Stauffacher's damages with any reasonable degree of certainty.
 
 
 22
 Although Stauffacher offered some new evidence of his damages at the second trial, the sum total of the evidence actually weighs more strongly against him in that trial than the first. The bulk of Stauffacher's evidence related to the value of his plane, yet Stauffacher's own expert, Mr. Rittenhouse, testified that the Malibu was worth $20,000 more with the remanufactured engine than it would have been had the original engine performed flawlessly and thus not required replacement. Tr. 2-35-36. Arguably, at least, this left Stauffacher in a better position than he would have been had the original engine performed perfectly.
 
 
 23
 Stauffacher nonetheless argues that the evidence as to his damages was sufficient to reach the jury. He points first to Rittenhouse's testimony that the market value of a hypothetical warranty that the Teledyne engine would actually last as long as its certified "time before overhaul" ("TBO") of 2,000 hours would be $40,000. Stauffacher seems to be arguing that because, in his estimation, the Teledyne engine is inherently unreliable and unable to reach its TBO, and the Gold Medallion Elite Warranty is inadequate to guarantee him a reliable engine, his plane is worth $40,000 less than a plane with the hypothetical guarantee to which Rittenhouse referred.[9] Again, however, Stauffacher's theory fails for lack of a benchmark. Rittenhouse offered no estimate of the value of the Gold Medallion Elite Warranty as compared to the hypothetical 2,000-hour guarantee. The Gold Medallion Elite Warranty, after all, provided full coverage on the engine up to 1,000 hours and pro-rata coverage thereafter up to 2,000 hours. The evidence also demonstrated that Teledyne had consistently honored this warranty. Moreover, but for one problem with the starter adapter assembly main housing, the remanufactured engine had performed without incident in the two years preceding trial. Thus, despite Stauffacher's contention that the Teledyne engine was so unreliable as to render the protection afforded by the Gold Medallion Elite Warranty illusory, the evidence did not, in fact, reasonably permit the inference that the warranty was worth nothing or that Stauffacher's plane was worth $40,000 less than a plane with the hypothetical 2,000-hour guarantee. See Tr. 2-34. Indeed, it bears mentioning once again that, according to Rittenhouse, Stauffacher's plane was worth $20,000 more with the remanufactured engine installed than it would have been had his first engine (which, by the time of trial, would have had over 1300 hours on it) performed without failure in the manner of the hypothetically "guaranteed" engine. Tr. 2-35-36.
 
 
 24
 Stauffacher also relies on evidence that he spent $23,642 installing a custom collision avoidance system in his Malibu. Stauffacher had formed a partnership with a University of Wisconsin professor to develop a unique collision avoidance system, and the equipment installed in Stauffacher's plane was a prototype. The installation of the equipment thus had nothing to do with any defect in the plane's engine. Although Stauffacher did testify that this equipment could not be removed and transferred to another plane (Tr. 1-135), we do not find this to be a basis for awarding damages. Stauffacher did not testify that the equipment was inoperable in the Malibu, nor was there any testimony that in the event Stauffacher sold the plane, the equipment would not add to the plane's overall value, thus enabling Stauffacher to recoup at least some of the money he had invested in the equipment.
 
 
 25
 Finally, Stauffacher testified once again at the second trial that he had incurred over $34,000 in engine-related expenses for which Teledyne had not reimbursed him. Tr. 1-128-29, 130-31, 179; Plaintiff's Ex. No. 60. Yet, the evidence concerning these expenditures was as minimal at the second trial as it was at the first. Stauffacher made no attempt to itemize these expenses or supply any basis for a jury to determine which of the expenses, if any, were due to defects in the engine. See Tr. 2-74.
 
 
 26
 When it granted Teledyne's motion for a new trial, the district court was quite specific in identifying the defects in the damages evidence Stauffacher had offered at the first trial. Stauffacher v. Teledyne Continental Motors, No. 90 C 903, Mem.Op. at 10-12 (W.D.Wis. Feb. 26, 1992). Before Stauffacher rested at the second trial, the court also specifically reminded his counsel regarding Rittenhouse's inability at the first trial to identify what portion of the depreciation in Stauffacher's plane was due to defects in the engine. Tr. 1-226, 227. Despite these warnings, the case Stauffacher made for damages at the second trial suffered from the same defects the court had identified after the first trial. On this basis, the district court was correct in granting Teledyne judgment as a matter of law.
 
 C. Excluded Evidence of Damages
 
 27
 Stauffacher also argues that the district court erroneously excluded certain testimony at the second trial and thus deprived him of the opportunity to prove his damages. Of course, our review of the trial court's evidentiary rulings is differential; we will find error only if such a ruling constitutes an abuse of discretion. E.g., Stutzman v. CRST, Inc., 997 F.2d 291, 299 (7th Cir.1993). We find no such abuse here.
 
 
 28
 Stauffacher testified that due to the history of trouble with his engines, he is reluctant to fly the Malibu aircraft above 12,000 feet. By restricting his flight to lower altitudes, however, he sacrifices speed. At the second trial, Stauffacher testified that on average his flights are seventeen percent longer than they would be if he flew the plane at higher altitudes. Tr. 1-131-32. Stauffacher then attempted to testify that the increased flight time resulted in a seventeen percent drop in the value of the plane. Tr. 1-132. The district court sustained Teledyne's objection to this testimony, noting that Stauffacher was not qualified to offer an opinion on the plane's loss in value and had not identified any rational basis for concluding that the plane had lost seventeen percent of its original value. Tr. 132-33. We discern no abuse of discretion in this ruling. Stauffacher's formula is completely unfounded; no evidence suggests that market value of the plane corresponds exactly to a decrease in speed.[10]
 
 
 29
 The district court also barred Stauffacher and Rittenhouse from testifying as to the increased operating costs Stauffacher had purportedly incurred as a result of flying at lower altitudes and lower speeds. The district court appears to have barred Stauffacher's testimony on the ground that his calculation of increased operating costs rested on the same type of unfounded assumptions as his assessment that the plane had lost seventeen percent of its value due to the decrease in airspeed. Tr. 1-134-35. We find no abuse of discretion in this ruling. Rittenhouse's testimony was excluded on a different, but related ground. Rittenhouse was asked to assume that "an airplane will be flying at 10,000 feet instead of the 25,000 foot density altitude ceiling and that it will lose 30 knots in air speed" and to offer his opinion as to what additional operating cost per hour would result. Tr. 2-13; see also Tr. 2-12. The district court sustained Teledyne's objection to this inquiry for lack of foundation. Again, we discern no error in the district judge's rationale. This inquiry assumed that Stauffacher was in fact compelled to fly at lower altitudes (see supra n. 10), that his plane would necessarily lose 30 knots in speed at those altitudes, and that the decreased speed would, in fact, result in higher operating costs. Although he was not precluded from doing so, Stauffacher failed to provide evidentiary support for these assumptions. We also note that when the inquiry was first posed, Rittenhouse indicated only that he "would have a guesstimate" of the increased operating costs. Tr. 2-13. In our view, such a "guesstimate" does not form the proper basis for an award of damages.
 
 III. CONCLUSION
 
 30
 Because the record at neither trial reveals a basis for a reasonable estimate of Stauffacher's damages, Teledyne was entitled to judgment as a matter of law. Usually a plaintiff gets one bite at the apple. Stauffacher had two.
 
 
 31
 JUDGMENT AFFIRMED.
 
 
 
 [1]
 Stauffacher also sued the manufacturer of the airplane, Piper Aircraft Corporation. However, on July 19, 1991, Piper filed a Notice of Bankruptcy (R. 27), and on October 1, 1991, the district court entered an order dismissing Piper from the suit without prejudice (R. 39)
 
 
 [2]
 The pro rata coverage required Stauffacher to pay a portion of the cost of repair or replacement equal to the total number of engine hours divided by 2,000. Thus, beginning at 1,000 hours, the warranty required Stauffacher to pay one-half of any repair or replacement costs and a progressively greater share as the number of hours on the engine approached 2,000
 
 
 [3]
 The Gold Medallion Elite Warranty provided for calculation of Stauffacher's pro-rata share based on engine use of 40 hours per month, unless the actual use was greater. In Stauffacher's case the actual use totalled less than 40 hours per month; nonetheless, his pro-rata share of the remanufactured engine cost was calculated in his favor using the actual time on the engine (approximately 1100 hours). Tr. 2-A-139-40; 1-168; 2-27-28
 
 
 [4]
 The district court dismissed the strict liability claim in advance of trial, finding that claim barred under Wisconsin law by the economic loss doctrine. Stauffacher v. Piper Aircraft Corp., No. 90 C 903, Mem.Op. at 8-12 (W.D.Wis. May 2, 1991). The fraud claim survived until the first trial; however, at the close of plaintiff's case, the court granted judgment as a matter of law in favor of Teledyne, finding the evidence insufficient to support such a claim. Tr. 2-A-110-17
 
 
 [5]
 Although Teledyne had also moved for judgment notwithstanding the verdict, the district court found that Teledyne's failure to seek a directed verdict on the warranty claim at the close of plaintiff's evidence barred this relief. Feb. 26, 1992 Mem.Op. at 6-7
 
 
 [6]
 Indeed, Stauffacher does not argue on appeal that short of adequate proof that he suffered injury as a result of Teledyne's alleged breach of warranty, he still would be entitled to nominal damages
 
 
 [7]
 Insofar as Stauffacher might have been entitled to recover punitive damages on his fraud claim even if he recovered only nominal damages, cf. Robison v. Lescrenier, 721 F.2d 1101, 1113 (7th Cir.1983), we agree with the district court that Stauffacher failed to prove any misrepresentation of fact that would support a claim of fraud. Tr. 2-A-110-17
 
 
 [8]
 At the second trial, Stauffacher's own expert testified that the plane was worth $20,000 more with the remanufactured engine that it would have been worth had the first Teledyne engine performed flawlessly. Tr. 2-35-36; see also Tr. 2-A-34-35, 158, 163-64 (testimony of Johnny K. Foster) (first trial)
 
 
 [9]
 The TBO represents the number of hours at which the engine must be completely overhauled or replaced, even it is performing flawlessly. At both trials, the parties disputed the significance of the TBO: Teledyne argued that the TBO simply represented the engine's maximum life; Stauffacher, on the other hand, contended that it was the equivalent of a guarantee that the engine would reach that number of hours. We point out, however, that Stauffacher testified unequivocally that he had not relied on the Malibu's 2,000-hour TBO in purchasing the plane. Tr. 1-67. Stauffacher likewise testified that he had not relied on the terms of Teledyne's engine warranty when he purchased the plane. Tr. 1-107. Thus, the legal basis for calculating damages based on the value of an engine that was hypothetically "guaranteed" to reach its TBO of 2,000 hours is unclear
 
 
 [10]
 We also note the lack of evidence that Stauffacher must refrain from flying above 12,000 feet. Stauffacher did testify that he was reluctant to fly at higher altitudes because the engine cylinder head temperature climbed to the top of the safe range at those altitudes, a circumstances that, in his view, would contribute to engine failure and shorten the engine's life. Tr. 1-121-22, 123-24, 187. Stauffacher also acknowledged, however, that the operator's manual for the plane indicated that the cylinder head temperature was acceptable as long as it remained within the safe or "green" range and that the temperature had never exceeded that range in his experience. Tr. 1-123-24. Indeed, at the first trial, Stauffacher indicated that since he had begun using synthetic oil in the engine, the cylinder head temperature had dropped. Tr. 2-A-52, 66; see also Tr. 1-B-102-03. Thus, it is far from clear on this record that Stauffacher's decision to restrict his flight to lower altitudes is in fact reasonable, such that he might be able to claim damages for any costs resulting from that decision